**UNITED STATES of America,
Appellee,**

v.

**Richard BELTRAM and Andres Colon,
Defendants-Appellants.**

**No. 158, Docket 31420.**

United States Court of Appeals
Second Circuit.

Argued Nov. 9, 1967.

Decided Jan. 22, 1968.

Abraham D. Sofaer, Asst. U. S. Atty., (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Douglas S. Liebhafsky and Pierre N. Leval, Asst. U. S. Attys., on the brief), for appellee.

Joshua N. Koplovitz, New York City, (Anthony F. Marra, New York City, on the brief), for appellant Beltram.

Abraham Solomon, New York City, for appellant Colon.

Before LUMBARD, Chief Judge, and MEDINA and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Richard Beltram and Andres Colon appeal from judgments of conviction for violations of 26 U.S.C. §§ 4705(a) and 7237(b) by sales of narcotics without written order on a form issued for the purpose by the Secretary of the Treasury. We affirm the judgments.

The evidence, taking a view of it most favorable to the government as we are required to do, United States v. Tutino, 269 F.2d 488 (2d Cir. 1959), establishes the following:

On August 20, 1964, appellant Beltram approached Scott, an undercover agent for the narcotics bureau, in a bar, and offered to sell him cocaine and marijuana. Scott said he would buy a half ounce of cocaine now and, if that proved satisfactory, he would later buy cocaine in ounce quantities. Beltram and Scott then went to a nearby grocery store where Beltram made a telephone call. They then drove to an apartment house on West End Avenue and went up to apartment 3-A. Beltram opened the front door of the building and the door of the apartment with keys which he had.

Once in the apartment Beltram told Scott that they would have to wait for about an hour. About an hour later they heard an automobile horn sounded in the street outside. Beltram looked out the window and then told Scott to go into the kitchen, adding "He's here." Scott went to the kitchen and from there heard Beltram open the door and greet somebody. Almost immediately thereafter Beltram brought Scott a glassine envelope containing cocaine and Scott paid Beltram $250, the price earlier agreed upon. Beltram told Scott that he was prepared to sell more cocaine and he gave Scott a paper napkin on which he had written a telephone number and instructions as to how to reach him.

Four days later Scott called Beltram and was asked to come again to Beltram's apartment. At the apartment Scott told Beltram that he wanted to buy an ounce of cocaine. Beltram said there would be a short wait and collected $500 from Scott. Beltram then adjusted the venetian blind on a window facing the street, in such a way as to indicate that he was signalling to a confederate outside. A few minutes later the bell in the apartment rang. Beltram said that his "connection" had arrived. Instructing Scott to remain where he was, Beltram drew a curtain separating the room from a hallway leading to the outer door of the apartment. However, Scott was able to see a short man come in the front door and go with Beltram to the far end of the hallway. Beltram then came back and gave Scott a double glassine envelope containing cocaine.

On the occasion of both of the sales there were two other narcotics agents, Smith and Raugh, posted outside the apartment house. On the first occasion they saw Scott and Beltram enter the house and a few minutes later saw Colon enter the house and then leave. Nobody else entered or left the building from the time Beltram and Scott went in until Colon left.

On the occasion four days later the agents saw Scott go into the building and then saw Beltram and Scott inside Beltram's apartment. They saw Beltram adjust the venetian blind soon after Scott entered the apartment. Colon thereupon approached the building, went into the vestibule, rang the bell for Beltram's apartment 3-A, and entered the inner door. The surveilling agents saw Scott leave the building a few minutes later and thereafter saw Colon leave. Between the time Scott entered the building and the time Colon left, nobody else entered the building and only Scott left it.

The indictment contained two counts. The first count charged Beltram with the sale on August 20; the second count charged both Beltram and Colon with the later sale.

The appellants were found guilty as charged by Judge MacMahon sitting without a jury. Beltram was sentenced to five years on each count, the sentences to run concurrently. Colon, as a second offender, was sentenced to twelve years.

### Grand Jury Testimony

Beltram and Colon moved to dismiss the indictment on the ground that the testimony on the basis of which the indictment was returned was the hearsay testimony of Smith, one of the surveilling agents, rather than the direct testimony of Scott.

■ There was no attempt to mislead the grand jury and the members of that jury must have understood from the character of Smith's testimony that he was not testifying of his own knowledge as to what went on inside the apartment.

This court has never held that an indictment must be dismissed because it was secured by hearsay testimony. Indeed the authority is to the contrary.

"The presentation of hearsay testimony before the grand jury is clearly permissible, and indictments based thereon are valid indictments under the rule of Costello v. United States, 350 U.S. 359, [76 S.Ct. 406, 100 L.Ed. 397] (1956), even though recently the practice has been subjected to judicial criticism in this circuit. See United States v. Umans, 368 F.2d 725, 730 (2 Cir. 1966), cert. granted, 386 U.S. 940 [87 S.Ct. 975, 17 L.Ed.2d 872] (1967) [cert. dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (U.S., Nov. 6, 1967)]; United States v. Payton, 363 F.2d 996, 999 (2 Cir.), cert. denied, 385 U.S. 993, [87 S.Ct. 606, 17 L.Ed.2d 453] (1966)." United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).

The indictment in the present case was returned before the issuance of the decision in Umans.

### The Evidence Against Colon

Colon asserts that the evidence against him was insufficient to support his conviction. We do not agree.

■ The evidence of the surveilling agents as to Colon's entering and leaving the building at the time when Beltram's supplier arrived and left, together with the testimony that he was the only person to enter and leave at this time, is sufficient to establish Colon's guilt, even though Scott could not identify him.

### Colon's Sentence as a Second Offender

■ Colon contends that he was improperly sentenced as a second offender because the court counted as a first conviction a conviction in the United States District Court for the District of Puerto Rico which was, at that time, a "legislative court." This contention is foreclosed by United States v. Montanez, 371 F.2d 79 (2d Cir.), cert. denied, 389 U.S. 884, 88 S.Ct. 147, 19 L.Ed.2d 181 (1967).

Affirmed.

MEDINA, Circuit Judge (dissenting):

I dissent. But I do not dispute the fact that there is no constitutional obstacle to the presentment of a case to the grand jury by means of hearsay evidence. Such a view is foreclosed by Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). My point has a double aspect. As the grand jury may and often does refuse to indict, it seems to me that it is only just and fair to require the prosecutor at least to warn the grand jury that most or all of the proofs presented are at second hand. Of even greater significance, in my opinion, is the evil practice, especially in narcotics cases, of using before the grand jury only a peripheral witness, who recites in more or less narrative fashion what other narcotics agents have seen, heard or done. The key witness, in this case Scott, is not produced; nor is the grand jury told in any intelligible way that the principal witness to the commission of the crimes has not been produced. The inevitable consequence of this procedure is to make it impossible for the defense, by demanding production of the grand jury minutes at the trial, to use con-

tradictions and misstatements of the principal witness under oath to impeach him.

I remember the days when it was like pulling teeth to get a federal judge to hand over grand jury minutes to defense counsel for purposes of cross-examination. But those times have passed and, in a more enlightened age, it is thought more consistent with the accused's right to defend himself to permit his counsel, generally as a matter of course, at least in this Circuit, to see the grand jury testimony of trial witnesses for the prosecution and to permit the use on cross-examination of these witnesses of such parts of the grand jury testimony as counsel deems to be contradictory. What is the use of such a practice, established in the cause of truth and justice, if the prosecutor can in effect return to the old system by the simple expedient of withholding key witnesses from the grand jury hearing?

These narcotics agents are not sacrosanct. The only way to make them mend their ways is, in the exercise of our supervisory powers, to reverse a few convictions obtained in this manner.

Generally speaking our Court has passed over this particular practice, as does the majority opinion in this case, by citing Costello and saying that we have never held that an indictment should be dismissed "because it was secured by hearsay testimony." But in United States v. Umans, 368 F.2d 725 (2d Cir. 1966), the following was the unanimous view of a panel of this Court:

> While we are not condemning the procedure used here before the grand jury, we think it not amiss for us to state that excessive use of hearsay in the presentation of government cases to grand juries tends to destroy the historical function of grand juries in assessing the likelihood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposed to afford to the innocent. Hearsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge. 368 F.2d at page 730.

With all due respect for my brothers, I cannot see how this is any test at all. It surely does not go to the point I am making in this dissent. How is one to know when the use of hearsay is "excessive"? In this very case it is claimed that direct testimony was unavailable and that it was demonstrably inconvenient to summon Scott as a witness before the grand jury, simply because he had been working late the night before the case was presented to the grand jury and because of the limited number of narcotics agents.

Moreover, in this case the failure to call Scott to testify before the grand jury might have brought about a conviction that otherwise would have been an acquittal. At the trial Scott admitted he had not been able to identify the man who came into Beltram's room on the night of the second purchase of cocaine. But, in his recital to the grand jury of what Scott had seen, Smith unequivocally said that Scott did identify Colon. Had Scott given any such testimony before the grand jury it would inevitably have been brought out on cross-examination at the trial, after perusal of the grand jury minutes, and, at the very least, Scott's credibility would have been impaired, especially as the testimony that he could and did identify Colon and that he could not and did not identify Colon given on the two occasions respectively was under oath. On the other hand, had Scott been produced and had he testified to the grand jury that he was unable to identify Colon, the grand jury might have refused to indict.

While the Supreme Court at first granted certiorari in Umans and then later dismissed the certiorari as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (Nov. 6, 1967), it may well be that the reason for the dismissal was that the point was not directly raised in Umans. But it was directly raised

and passed upon by the trial judge in this case.

Accordingly, I agree with my brother Friendly's dissent in United States v. Payton, 363 F.2d 996, 999 ff. (2d Cir.), cert. denied 385 U.S. 993, 87 S.Ct. 606, 17 L.Ed.2d 453 (1966), and would reverse the judgment below as against both appellants and dismiss the indictment. This would not let appellants go scot free, as there would be time to reindict them and have their guilt or innocence passed upon again on a record not tainted with irregularity.