**STUYVESANT INSURANCE COMPANY**

v.

**R. LELOUP SHRIMP COMPANY**
**and Harris Lasseigne.**
**Civ. A. No. 69–C–198.**

United States District Court,
S. D. Texas,
Corpus Christi Division.

March 5, 1971.

R. W. Woolsey, Corpus Christi, Tex., for plaintiff.

Benjamin S. Hardy, Brownsville, Tex., for defendants.

## MEMORANDUM OPINION

OWEN D. COX, District Judge.

Plaintiff Stuyvesant Insurance Company brought this suit, asking the Court to declare that it has no liability under an insurance policy issued to Defendant Harris Lasseigne covering the wooden trawler NOLAN R. There was a collision in the Gulf of Mexico on June 20, 1965, between the HAZEL FOSTER, which sank at the site, and the NOLAN R, which sank while returning to shore. Plaintiff paid Lasseigne, under the policy, $15,000 for the loss of the NOLAN R and also sues herein to get that money back, claiming the payment was mistakenly made. The Defendant R. Leloup Shrimp Company has been dismissed and is no longer a party to this action.

This legal controversy began in September, 1965, when Harris Lasseigne filed a proceeding for limitation of his

liability. Two other suits were filed concerning the collision, and all causes were consolidated under Admiralty Docket No. 65–H–135. On the trial of the consolidated admiralty cases, all fact issues relating to the collision were before the Court. During the entire course of such litigation, Harris Lasseigne was represented by an attorney furnished him by the Plaintiff. Lasseigne's petition to limit liability was denied. The owners of the HAZEL FOSTER recovered judgment against him in the amount of $34,000 for the loss of their vessel and Lasseigne has paid the judgment.

In the prior litigation, Mr. Lasseigne had the burden of proving he had no privity or knowledge of five alleged unseaworthy conditions which claimants (owners of the HAZEL FOSTER) contended were present at the beginning of the last voyage of the NOLAN R. The Court found Lasseigne did not meet the burden of proving the NOLAN R was manned by competent officers. At this point and for the first time, Lasseigne was advised he had breached his warranty of seaworthiness and thus there was no coverage under his policy. Stuyvesant Insurance Company then brought this suit. Defendant contends waiver and estoppel preclude Plaintiff from asserting no-coverage.

■ Plaintiff relies on C. E. Carnes and Company v. Employers' Liability Insurance Corp., 5 Cir., 101 F.2d 739, to support its contention that insurance policy coverage cannot be extended by waiver or estoppel. However, there is an exception to this rule available in the rare instance where an insurer, with knowledge of the lack of coverage, assumes and conducts a defense to conclusion without either disclaiming liability or obtaining a reservation of its rights. Rowe v. United States Fidelity and Guaranty, 5 Cir., 375 F.2d 215.

The Plaintiff was aware at the beginning of the prior litigation that the fact issue upon which the reason now presented for its no-coverage contention is based was before the Court. Although that fact created a potential conflict of interest, Mr. Lasseigne was not so advised by the company before the proceedings were commenced nor at any time thereafter. How easy it would have been to explain to Lasseigne that if the Court decided he had, with privity and knowledge, failed to provide a seaworthy vessel, there would be no coverage under the policy. With such information, Mr. Lasseigne could have made a decision as to whether or not he would enter into a nonwaiver agreement with the company, or would get himself another lawyer. The company, if its contention here is sustained, was at all times in the enviable position that, if Lasseigne's liability was not limited, it would have no financial responsibility to him for the loss of his own vessel, and whether liability was limited or not, it would have no responsibility as to the HAZEL FOSTER.

■ This Court recognizes the fact that the nature of the proceedings to limit liability creates a slightly different situation than in most insurance cases, but the principle is the same. There was divided loyalty, which not only affected the limitation of liability proceedings, but was heavily involved with regard to the $15,000 which Stuyvesant Insurance Company had paid to Lasseigne for the loss of the NOLAN R and which it now wants back. The company, under the circumstances above outlined, is now precluded from denying coverage under the policy, even if Defendant did breach his warranty to Plaintiff by sending the NOLAN R to sea in an unseaworthy condition. Farm Bureau Mutual Automobile Company v. Hammer et al., 4 Cir., 177 F.2d 793.

Since the Court has decided there is coverage, it now becomes necessary to determine just what that coverage is. There doesn't seem to be any question that the Plaintiff is obligated to Defendant Lasseigne for the $15,000 insured value of the NOLAN R. Plaintiff has already paid that amount to Lasseigne and he is entitled to keep it.

What rights Lasseigne has under the policy by way of relief from the burden of the judgment against him, which he has already paid, poses a much more difficult question. The insurance policy, in the paragraph which is sometimes referred to as the Collision or Running Down (Four-fourths) Clause, as related to this case, in effect provides that if the insured vessel (NOLAN R) is involved in a collision with any other ship (HAZEL FOSTER) and the assured (Lasseigne), in consequence of the insured vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person (owners of the HAZEL FOSTER) any sum ($34,000) in respect of such collision, the underwriters will pay the assured so much thereof as will not exceed the value of the insured vessel ($15,000), subject to the $2,500 deductible clause.

These provisions of the policy plainly say that, under the facts before this Court, the Plaintiff is obligated to pay Lasseigne the sum of $12,500 by way of reimbursement for a portion of the money already paid on the judgment by Lasseigne, and this Plaintiff shall do. No citation of authority is necessary on this point.

But such $12,500 will not, of course, make Lasseigne whole. There remains, after deducting such amount, $21,500 of said $34,000 judgment. So, the next step is to determine whether or not the paragraph headed "PROTECTION AND INDEMNITY CLAUSES" in the policy constitute additional coverage so as to bind Plaintiff to pay to Lasseigne such remaining amount. The language of this paragraph creates an obligation on the part of the Plaintiff to pay Lasseigne if he has "become liable to pay, and shall have in fact paid, any sum" (which he has) as to loss or damage in respect to any other ship or boat caused by the insured vessel, "*in so far as* the same is *not* covered by the Running Down Clause in or attached to the policies on Hull and Machinery." (Emphasis added.)

As the Court reads the quoted language, it does not preclude protection and indemnity coverage for Lasseigne because $21,500 of the $34,000 judgment is a *loss not covered* by the Running Down Clause. So, the Protection and Indemnity Clauses, if there were no other exclusionary clauses in the policy, would provide to Lasseigne the additional financial help needed by him. Landry v. Steamship Mutual Underwiting Assn., 1 Cir., 177 F.Supp. 142, affirmed in 281 F.2d 482 (1960).

But there is a second exclusionary clause and it is worded differently. It is headed in heavy type, "NOTWITHSTANDING THE FOREGOING, NO LIABILITY TO ATTACH TO THIS COMPANY:" and it excludes liability for any loss, damage or expense "in connection with *any accident covered under* the Four-fourths Running Down Clause, * * *." (Emphasis added.) There is a difference between *a loss covered by* and *an accident covered by* the policy. It is clear that the accident here involved (the collision) was covered by the "Four-fourths Running Down Clause." This second exclusionary clause is too specific to justify a contention of ambiguity. So, the Court holds the protective and indemnity provision does not offer additional coverage to Lasseigne.

Defendant also contends Plaintiff Stuyvesant Insurance Company is obligated to fully reimburse him under the law of G. A. Stowers Furniture Co. v. American Indemnity Co., (Tex.Com. App.) 15 S.W.2d 544 (1929). This case has been interpreted by the Fifth Circuit, Fidelity and Casualty Company of New York v. Robb, 267 F.2d 473 (1959), to say that consideration of an offer of settlement must be looked at from the standpoint of both insured and the insurer. The Defendant has cited Smith v. Transit Casualty Company, 5 Cir., 281 F.Supp. 661, affirmed 410 F.2d 210, which indicates the insurance company is to consider only the insured; but neither opinion cited or discussed the *Robb* case and the Court does not believe the rule set forth in the *Robb* case has been changed.

It is true in this case that the attorney recommended to the company that it should accept a settlement offer of $20,000 if Lasseigne would pay the difference between such offer and the policy limits. The company rejected the offer because it exceeded the policy limits and because it felt it had a very good chance to prevail. There was no other settlement offer. The attorney felt there was a conflict of interest involved and discussed it with Lasseigne who was willing for the attorney to continue to represent him. The Court feels the facts do not warrant an application of the Stowers Doctrine.

It is, therefore, declared by this Court that (1) the Defendant Lasseigne was entitled to coverage under the policy, (2) Plaintiff is not entitled to recover back from Lasseigne the $15,000 paid him for the loss of the NOLAN R, and (3) Defendant is entitled to recover from Plaintiff Stuyvesant Insurance Company the sum of $12,500 under the policy here under scrutiny. The Defendant is directed to prepare a judgment in accordance with this opinion.