**PACIFIC INDEMNITY COMPANY,**
Plaintiff-Appellant,

v.

**ACEL DELIVERY SERVICE, INC., et al.,**
Defendants-Appellees.

No. 72–2118.

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1973.

As Modified on Denial of Rehearing
Nov. 23, 1973.

Spencer C. Relyea, Logan Ford, Dallas, Tex., for plaintiff-appellant.

Sam S. Stollenwerck, Dallas, Tex., for Acel.

William C. Manning, Mabank, Tex., for Santos.

Tom H. Davis, Austin, Tex., for Talley.

Norman W. Darwin, Fort Worth, Tex., for Singe,

Henry W. Simon, Jr., Fort Worth, Tex., for Baker.

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This is a Texas diversity case initiated by Pacific Indemnity Company, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, as to whether a policy issued by Pacific to Acel Delivery Service, Inc., covering a Piper Comanche aircraft imposes liability upon Pacific for an accident occurring near Raton, New Mexico. There are essentially two issues that must be resolved: (1) whether the policy provides coverage for the risk involved in the accident, and (2) whether Pacific has waived or is estopped from asserting a defense of non-coverage under the policy because Pacific assumed the defense of a lawsuit initiated in a Texas state court against one claiming coverage under the policy. The district court found that there was no coverage under the policy, but that Pacific was estopped to raise the defense of noncoverage because the insurer had assumed the defense of one claiming policy coverage. We agree with the district court's disposition of this case and therefore Affirm.

The events that give rise to this controversy commenced on May 27, 1967. An aircraft owned by Acel Delivery Service, Inc., and insured by Pacific Indemnity Company crashed, killing the pilot, Wendell Williams, a passenger, Joe Mack Talley, and seriously injuring the father of the deceased passenger, Walter C. Talley. This action was initiated on March 26, 1969, when Pacific filed suit against Acel seeking a declaratory judgment and an injunction to stay further Texas state court proceedings until Pacific's liability under its policy issued to Acel was determined. The district court granted an injunction on July 18, 1969, but this court subsequently vacated the injunction. Pacific Indem. Co. v. Acel Delivery Service, Inc., 432 F.2d 952 (5th Cir., 1970).

Three lawsuits were pending in Texas district courts when this declaratory judgment action was filed. The first suit was brought by the estate of Joe Mack Talley and Walter C. Talley against the estate of Wendell Williams. While Pacific attempted to obtain a non-waiver agreement to preserve its rights on behalf of the estate of Wendell Williams before assuming a defense, it failed to do so. Pacific directed that an answer be filed on behalf of the Williams estate, and consequently the defense was assumed until October 9, 1970, at which time Pacific decided to withdraw. On Pacific's withdrawal another attorney appeared on behalf of the Williams estate. Less than a month after Pacific's withdrawal the case was tried and judgments were rendered against the estate of Wendell Williams in favor of Walter C. Talley for $94,979.45, in favor of Sandra Talley for $600,000, and in favor of the minor daughter of Joe Mack Talley for $150,000.

A second suit was filed by Edward A. Baker, the owner of racehorses injured in the accident, against the estate of Wendell Williams and against Acel Delivery Service. Pacific answered this complaint only on behalf of its named insured, Acel Delivery, after obtaining a non-waiver agreement from Mr. Santos, the president of Acel, but not in regard to the estate of Wendell Williams.

A third suit was filed by Acel Delivery against Mrs. Williams as the representative of the estate of Wendell Williams. The state court, however, dismissed this action, and it therefore is not involved in this appeal.

This court must now determine Pacific's liability in these lawsuits based upon the policy issued to Acel covering the aircraft.

I.

The first issue that we must resolve is whether there was coverage of the acci-

dent under the insurance policy issued by Pacific to Acel. As an elementary observation, we acknowledge that the coverage provided by the insurance is governed by the policy provisions. The policy states that the aircraft was insured only when used for "pleasure and business," defined as " [p]ersonal, pleasure, family and business uses excluding an operation for which a *charge* is made" (emphasis added).

■ The appellees contend that the term "charge" is synonymous with the term "profit." Relying primarily on Houston Fire and Cas. Co. v. Ivens, 338 F.2d 452 (5th Cir., 1964), the appellees contend that the mere reimbursement for expenses does not constitute a charge within the meaning of the policy. *See also* Fidelity & Cas. Co. v. Crist, 248 Ark. 1010, 455 S.W.2d 904 (1970); Thompson v. Ezzell, 61 Wash.2d 790, 379 P.2d 983 (1963). Appellees introduced testimony to the effect that the $10 an hour assessment would barely cover the aircraft's maintenance and overhead expenses. There was additional testimony that the average rental of a similar Comanche aircraft is $25 to $30 an hour and that a rental for $10 an hour would not be profitable. The appellees' reliance upon these cases is misplaced. The appropriate standard for determining whether a charge was made depends upon the motivating reasons for making the flight. The facts in the *Ivens* case, *supra*, show that the pilot of the aircraft, Ivens, was an equipment salesman for N. M. Ulsch & Son, working strictly on a commission basis. Ivens agreed to fly a customer, Fletcher, from Jacksonville, Florida, to Knoxville, Tennessee, to procure a piece of equipment. Ivens requested that his passenger contribute toward the cost of the gasoline, and Fletcher agreed to do so because Ivens was not going to receive a commission on this particular sale. Fletcher paid $60 to help pay for the flight expenses. The *Ivens* court held that Fletcher's contribution was not a charge as prescribed in the policy. The court made clear that "when a charge is made for something,

there is the distinct connotation that there is a *quid pro quo*. A charge may thus be considered as the price demanded for a thing or service. The agreement of Ulsch was merely the offer of a contribution made to help Ivens defray the cost of the gasoline." *Id*. 338 F.2d at 455. Fletcher's contribution toward the cost of the gasoline was a purely voluntary gesture. This contribution was not the motivating factor for the flight.

■ The facts as found by the trial court, compel a different result in the case at bar. The trial court found that the pilot of the aircraft, Williams, gave an $84 check to L. E. Clark, the owner and operator of Clark's Flying Service, where the aircraft was hangared, for the use of the aircraft. Clark testified that he expressly discussed with Santos, the president of Acel Delivery, the amount which was to be assessed Williams for the use of the aircraft, fixing the rate at $10 per hour flying time in addition to Williams furnishing all the necessary gasoline and oil. The district court also found that on two prior occasions the aircraft had been used by other pilots for $10 an hour in addition to the gasoline and oil. On the basis of these factual findings the court held that there was a charge within the meaning of the policy because the payment of the $84 was not a voluntary gesture, but was a motivating factor and a prerequisite to the flight taking place. Accordingly, the flight was not covered by the policy.

We find additional support for this conclusion included within the policy itself. The policy excludes as a charge the sharing of expenses, as in *Ivens*, but narrowly defines the expenses that may be shared as limited to fuel costs and storage fees pertaining to a particular flight. In the case at bar, however, the $10 an hour cost was assessed in addition to the fuel and storage of the aircraft. This excess over and above the cost of fuel and storage can only be regarded as a charge. Based upon these facts we hold that there was a charge made, within the meaning of the policy, for the flight.

## II.

■ Finding that the flight resulting in the accident was not within the coverage of the policy, we must now determine whether Pacific is precluded from raising this defense by the doctrines of waiver or estoppel. It is well settled in Texas that these doctrines will not operate to create coverage in an insurance policy where none originally existed. The reason underlying this rule is that the insurer should not be held liable for a risk which goes beyond the contractual agreement and for which no premium was collected. While waiver or estoppel may preclude an insurer's policy defense arising out of a condition or forfeiture provision, these doctrines do not normally operate to prevent the assertion of a defense of noncoverage. Employers Cas. Co. v. Tilley, 496 S.W.2d 552, 560 (Tex.1973); Minnesota Mutual Life Ins. Co. v. Morse, 487 S.W.2d 317, 320 (Tex.1972); see Beck v. Connecticut General Life Ins. Co., 456 F.2d 1040, 1041 (5th Cir., 1971); Travelers Indem. Co. v. Holman, 330 F.2d 142, 144 (5th Cir., 1964); Washington Nat'l Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 166–167 (1937); Great American Reserve Ins. Co. v. Mitchell, 335 S.W.2d 707, 708 (Tex.Civ.App., San Antonio 1960, writ ref'd).

■■ There is an exception to this general rule. If an insurer assumes the insured's defense without obtaining a non-waiver agreement or a reservation of rights and with knowledge of the facts indicating noncoverage, all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them. Ferris v. Southern Underwriters, 109 S.W.2d 223, 226 (Tex. Civ.App., Austin, 1937, writ ref'd); Automobile Underwriters Ins. Co. v. Murrah, 40 S.W.2d 233, 235 (Tex.Civ. App., Dallas, 1931, writ ref'd); 1 A.L.R. 3d 1143 n. 6 (1965); see Rowe v. United States Fidelity & Guaranty Co., 375 F.2d 215, 221 (4th Cir., 1967); Stuyvesant Ins. Co. v. R. Leloup Shrimp Co., 333 F.

Supp. 233, 235 (S.D.Tex., 1971). The theory underlying this exception is based upon the apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage. For estoppel to prevent the assertion of a defense of noncoverage in accordance with this exception, there must be a showing of prejudice. See Employers Cas. Co. v. Tilley, supra. See also Hartford Acc. & Indem. Co. v. Swilley, 304 F.2d 213, 216 (5th Cir., 1962); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952). As to the application of waiver, the proponent must demonstrate a voluntary relinquishment of a known right. E. g. Utilities Ins. Co. v. Montgomery, 134 Tex. 640, 138 S.W.2d 1062, 1064 (1940, opin. adopted). Because the district court disposed of this case on the basis of estoppel, we are not concerned with the application of waiver in this appeal.

We must now face the particular cases involved in this declaratory judgment action. In determining the applicability of the previously stated exception, we first turn to the circumstances surrounding the initiation and ultimate resolution of the lawsuit filed in the Texas district court by the estate of Joe Mack Talley and Walter C. Talley against the estate of Wendell Williams. For the exception to apply, we must analyze the facts in three respects: (1) whether the insurer obtained an effective non-waiver agreement or reservation of rights under the policy; (2) whether the insurer had sufficient knowledge of the facts upon which to predicate estoppel; and (3) whether there was prejudice to the insured.

■■ First, we hold that Pacific did not obtain an effective reservation of rights or non-waiver agreement. The applicable rule is properly summarized by Appleman as follows:

"From a practical point of view, the result is as follows: If the insured refuses to sign an agreement of reserva-

tion of rights, the insurer must then send him a nonwaiver notice. If he does not dissent therefrom, but permits the insurer to proceed, it is deemed to be protected. But if he refuses to accept a defense under those conditions and so notifies the insurer, then it must elect whether to withdraw or to proceed with the defense, in which latter instance its defenses are waived."

7 A. J. Appleman, Insurance Law and Practice § 4694 n. 32.5, at 547 (1962); *see* Great American Indem. Co. v. City of Corpus Christi, 192 S.W.2d 917, 919–920 (Tex.Civ.App., San Antonio, 1945, writ ref'd n. r. e.). The facts, as found by the district court, demonstrate that after Mrs. Williams was served with process, she consulted with her attorney. Her attorney forwarded his file to Pacific demanding an unqualified defense on behalf of the estate of Wendell Williams. Pacific responded to this letter, stating that it was its intention not to assume an unqualified defense and to reserve any rights under the policy in order that it might later deny liability. Mrs. Williams's attorney responded to Pacific's letter, stating that "[a]ny further action taken by you with respect to these cases will be with full knowledge of our demand and will be considered by us as an acceptance of these demands." Accordingly, we hold that Pacific's attempt to unilaterally reserve its right under the policy is ineffective because an objection was properly made on behalf of Mrs. Williams.

■ Second, appellant contends that, assuming estoppel may prevent the assertion of noncoverage as a defense, there is no factual basis upon which to predicate an estoppel. During Pacific's preliminary investigation of the Talley suit, it discovered conflicting reports as to whether a charge was made. Clark and Santos said that no charge was made for the use of the aircraft. To the contrary, Mr. Santos's ex-wife stated that a check was received for the flight in question, although she did not know for what purpose the check was given. While Mr. Clark subsequently testified under oath that a check was received from Williams, this information was first revealed in a deposition after Pacific had withdrawn from the defense of the Talley suit. This was one and one-half years after Pacific intially assumed the defense by answering the complaint. Additionally, Santos consistently maintains that no charge was made for the use of the aircraft, but was merely loaned to Williams.

Although the appellant was met with conflicting information, this information was sufficient to require Pacific to make further inquiry into the facts in order to make a more informed decision as to coverage. Alternately, Pacific could rely on the facts as it knew them and make the decision whether or not it would assume the defense. We find no Texas cases holding the insurer liable when it assumes a defense based on conflicting reports discovered during its preliminary investigation, but failed to make further inquiry in an attempt to establish the truth. We feel, however, that such a holding would be consistent with Texas law and the law of this circuit because it is founded upon sound policy considerations. Jefferson Amusement Co. v. Lincoln Nat'l. Life Ins. Co., 409 F.2d 644, 650 (5th Cir., 1969); Apperson v. United States Fidelity & Guaranty Co., 318 F.2d 438, 441 (5th Cir., 1963). For example, Federal Ins. Co. v. Forristall, 401 S.W.2d 285 (Tex.Civ. App., Beaumont 1966, writ ref'd n. r. e.), illustrates the proper conduct of the insurer. In *Forristall*, the insurer conducted an investigation, discovered facts sufficient to support noncoverage, and denied coverage without filing an answer for its insured or otherwise assuming the defense of the insured. Had Pacific, after filing the answer, made further inquiry in an attempt to determine whether there was coverage and withdrawn within a reasonable time thereafter, we would perhaps draw different

conclusions. Under the facts of this case, however, Pacific made the decision to represent the Williams estate when it filed an answer on the estate's behalf and failed to withdraw for one and a half years.

■ Incredibly, Pacific attempts to justify its withdrawal based upon the statements made by Clark when he was deposed *after* Pacific had withdrawn from the Talley suit. Clark, however, was a crucial witness, being one of no more than three living persons who had direct knowledge of the events that occurred prior to the accident. Yet there is no evidence in the record of any justification for Pacific's not deposing Clark prior to its withdrawal. Significantly, it was the investigator's suspicion from the outset that this flight might have been a flight for which a charge was made and thus in violation of the policy provisions.

Pacific also contends on appeal, as it did in the district court, that Santos and Clark were actively engaged in a conspiracy to conceal material facts. The trial court found that Pacific failed to establish the existence of a conspiracy. These findings of fact find sanction in the "clearly erroneous" rule. F.R.Civ.P. 52(a); McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir., 1966).

Consequently, we hold that because Pacific had knowledge of facts to indicate the possible lack of coverage, but through its own lack of diligence failed to make further inquiry to verify these doubts either for or against coverage, such a factual basis is sufficient to support an estoppel. Pacific cannot be allowed to benefit from its own inattentiveness and failure to more fully ascertain the facts over a one and a half year period.

■ Third, for estoppel to be effective against a defense of noncoverage even where the insurer has assumed the defense, prejudice must be shown to have been suffered by the party contending estoppel. See Employers Cas. Co. v. Tilley, *supra,* 496 S.W.2d at 560. We recognize that Pacific did not pursue the Talley suit to its conclusion, but withdrew from the defense on October 9, 1970, over one and a half years after filing the answer to the complaint. Pacific's untimely withdrawal less than one month prior to trial of the Talley suit, however, certainly does not preclude a finding of prejudice, but compels it. While we do not delineate all the possible prejudices that might have arisen as a result of Pacific's conducting the defense, we point out several obvious instances of prejudice. First, as stated by the district court,[1] Pacific failed to adequately answer plaintiff's interrogatories. The state district court therefore imposed sanctions constituting a $300 fine to cover attorney's expenses incurred to compel further answers. Subsequently, the district court imposed an

1. The district court stated that there were three possible sources of prejudice:
"(1) Mrs. Williams' plea of privilege was waived by filing an answer in Fort Worth; (2) The Estate was precluded from asserting the New Mexico aviation guest statute as a defense because counsel for Pacific judicially admitted in answer to interrogatories that a 'charge' was made for the flight; and (3) Sanctions were imposed on the Estate because Pacific failed to sufficiently answer interrogatories after being warned by the Trial Court."
We specifically rely on the sanctions imposed on the failure to answer interrogatories in finding that the insured suffered prejudice.

We therefore need not pass on the prejudicial effect of the other two grounds of prejudice stated by the district court.
The appellants contend that no prejudice can be shown because the judgment of the Texas state court in the *Talley* suit was against a non-entity. Phillips v. Teinert, 493 S.W.2d 584 (Tex.Civ.App., Houston, 1973, no writ). As explained above, the insured has sustained prejudice from being denied the opportunity to conduct and fully develop his case. This prejudice has been sustained regardless of whether the judgment entered in the state court was against a non-entity.

additional sanction and accepted as true the facts as alleged by plaintiff. Appellees' opportunity to investigate the facts while in close proximity to their occurrence has been forfeited. Moreover, the appellee has been deprived of the opportunity to conduct timely pretrial discovery such as propounding interrogatories or taking depositions. We do not speculate as to precisely how a defense might be pursued had Pacific refrained from assuming its control and management. We are convinced, however, that Pacific's actions deprived the appellees of the opportunity to present a more forceful defense.

 In addition to the prejudice resulting from Pacific's one and a half year assumption of the defense and subsequent untimely withdrawal, this case gives rise to a possible conflict of interest as a source of prejudice similar to the conflict so recently condemned by the Supreme Court of Texas. In Employers Casualty Co. v. Tilley, 496 S.W. 2d 552, 560 (1973), the Supreme Court of Texas recognized the conflict of interest when an attorney, acting on behalf of the insurer in defending a claim against the insured, simultaneously builds a defense against the insured on the part of the insurer. In *Tilley,* Employers Casualty Co. engaged an attorney to represent its insured, Tilley, in a personal injury suit. During the following eighteen months, the attorney not only performed services in defending Tilley, but also performed services for Employers concerning whether Tilley had coverage under the policy. Categorizing the conflict of interest as violative of public policy, the supreme court held that such an attorney-client relationship simply could not be condoned. The insurer is under an obligation to immediately notify the insured of the conflict of interests. Consequently, where there is a duty to speak, "an estoppel may arise from silence." *Id.* at 560. The court continued and stated that the insurer's failure to

notify the insured of a possible conflict of interests "for nearly 18 months can be attributed only to Employers' desire to strengthen its position in preparation for the filing of the instant suit." *Id.* at 561.

As the Texas Supreme Court analyzed *Tilley,* we can only regard Pacific's one and one-half year silence and delay as a period in which it could have strengthened its defense of noncoverage. Pacific was in complete control and management of the defense for this period of time and apparently failed to notify the insured of the possibility of its developing a defense. Obviously when such a conflict arises, there is the inherent possibility that in the course of the defense facts would be revealed to which the attorney could not close his eyes and that might later be used to assert noncoverage.

Consequently, there are two premises upon which we base an estoppel in this case. First, Pacific assumed the defense of its insured for one and one-half years and withdrew only a few weeks before trial of the case. By this extreme delay and absence of diligence, the insured has been denied the opportunity to fully investigate and conduct a defense. Second, this finding of prejudice is supported by the apparent conflict of interests that arose when the insurer assumed the defense with doubts concerning coverage and without notifying the insured of the conflict. Each of these premises illustrates Pacific's flagrant disregard for the rights of the insured. Based on the facts of this case, we hold that the insured has clearly sustained prejudice as a result of the insurer assuming the defense. The exception to the general principle, that the doctrine of estoppel operates to prevent the assertion of noncoverage, is therefore applicable.

 We turn now to Pacific's liability in Baker's suit filed against Acel Delivery and the estate of Wendell Williams. First, as to Acel, Pacific answer-

ed the complaint, but not before obtaining a non-waiver agreement. Non-waiver agreements in Texas are normally recognized as valid and enforceable, New Amsterdam Cas. Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (1945); Provident Ins. Co. v. Ashy, 139 Tex. 334, 162 S.W.2d 684, 686 (1942), and we find nothing to cast doubt upon the effectiveness of the non-waiver agreement here in question. The non-waiver agreement is valid and the insurer's defense of noncoverage against Acel is preserved.

With regard to the Williams estate, Pacific did not assume its defense in the Baker suit and consequently there are no facts upon which to estop Pacific from asserting noncoverage.

■ We make clear, however, that the validity of the non-waiver agreement in the Baker suit has no effect on Pacific's liability in the Talley suit. Generally, the right of any injured party to proceed against the insurer under the policy depends upon the insured's right of action against the insurer. The claimant has no greater rights than the insured. Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom, 347 F.2d 168, 178 (5th Cir., 1965); 8 J. Appleman, Insurance Law and Practice § 4811, at 164 (1962). The rights of the Williams estate in the Talley suit, however, vested under the insurance contract, American Indem. Co. v. Martin, 54 S.W.2d 542, 547 (Tex.Civ.App., El Paso, 1932), rev'd in part 126 Tex. 73, 84 S.W.2d 697 (1935); see J. G. Link & Co. v. Continental Cas. Co., 470 F.2d 1133, 1138–1139 (9th Cir., 1972), and as a result Santos's signing the non-waiver agreement will not alter the rights of the Williams estate. While the insurer has preserved its rights against Acel in the Baker suit, Pacific is nonetheless precluded from asserting any defenses against the Williams estate in the Talley suit.

The judgment of the district court is affirmed.