### NATIONAL SERVICE INDUSTRIES, INC., Plaintiff-Appellee,

v.

### HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellant.

No. 80–7163.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 16, 1981.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Montet & Smith, P. C., Malcolm P. Smith, Atlanta, Ga., for defendant-appellant.

Haas, Holland, Levison & Gibert, Hugh W. Gibert, Donald I. Hackney, Jr., Atlanta, Ga., for plaintiff-appellee.

Before JONES, TJOFLAT and ANDER-SON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this diversity case, appellee National Service Industries, Inc. ("National"), sued two of its insurers, appellant Hartford Accident & Indemnity Company ("Hartford") and Maryland Casualty Company ("Maryland"). National alleged that, in connection with Hartford's settlement of a products liability suit brought against National, Hartford improperly divided liability for the settlement between itself and Maryland, National's prior insurance company. Because of this improper division of liability, National contended that it was required to pay both the Hartford and the Maryland insurance policy deductibles, rather than just the Hartford policy deductible. At the conclusion of the evidence in the first trial of this case, National settled with Maryland and obtained a voluntary dismissal with prejudice of its claims against Maryland. As to National's claims against Hartford, the jury in the first trial returned a verdict in favor of Hartford. The district court granted National's motion for a new trial on the ground that the verdict was against the clear weight of the evidence. After a second trial, the jury found in favor of National, awarding it the value of the Maryland deductible and attorney's fees, but denying punitive damages.[1]

We affirm as to liability, but reverse as to damages and attorney's fees and remand with instructions concerning the proper determination of National's damages and for the entry of judgment for Hartford on the attorney's fees claim.

## I. FACTS

In 1973, Julius L. Riley brought a products liability suit against National, alleging that his chronic bronchitis resulted from his exposure, during his employment at a ship-

yard, to a National product called Zep Plus. As National's insurer at the time of the Riley suit, Hartford assumed the defense of the action. After discovering that part of Riley's exposure to Zep Plus occurred during the period that National was insured by Maryland, Hartford recommended and National agreed to the filing of a third-party complaint against Maryland, seeking to place on Maryland the entire potential liability for the Riley claim. Before trial, Hartford settled Riley's claim for $60,000 and obtained an agreement from Maryland to split between themselves the liability for the $60,000 settlement, with each insurer paying $30,000. National agreed to the settlement with Riley but objected to the division of liability between the two insurers. Under the policies, the equal division of liability required National to pay a $10,000 deductible to Hartford and a deductible of approximately $20,000 to Maryland.

## II. ISSUES

This case presents four major issues: (1) whether the district court properly granted a new trial after the first trial, (2) whether the jury instructions properly stated the duty that Hartford owed to National, (3) whether the district court adequately instructed the jury as to the damages that National suffered as a result of Hartford's actions, and (4) whether the district court should have granted Hartford's directed verdict motion as to National's attorney's fees claim.

## III. GRANT OF A NEW TRIAL AFTER THE FIRST TRIAL

Hartford contests the district court's grant of a new trial after the jury returned a verdict in Hartford's favor after the first trial. The district court ruled that the verdict in the first trial was against the

---

1. The jury's verdict reads in part:

 We, the Jury, find for the Plaintiff, National Services Industries, Inc. as follows: return of the retrospective premium from Maryland Casualty . . . .

 Hartford argues that this is a verdict returned against Maryland, a nonparty, rather than against Hartford, requiring Maryland, not Hart-

ford, to return to National the deductible that National paid Maryland. We reject this contention. Maryland was never a party to the second trial, having settled with National at the conclusion of the evidence in the first trial. The jury's verdict states, in effect, that Hartford should return to National the value of the deductible that National paid Maryland.

"clear weight" of the evidence, requiring a new trial. Although a district court's grant or denial of a new trial is ordinarily reviewable only for abuse of discretion or legal error, a more probing review applies to a grant of a new trial, especially when based on weight of evidence grounds. *Evers v. Equifax, Inc.*, 650 F.2d 793, 796–97 (5th Cir. 1981); *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir. 1980); *Love v. Sessions*, 568 F.2d 357, 361 (5th Cir. 1978). Having reviewed the evidence in the first trial, however, we cannot say that the district court erred in granting a new trial.

## IV. LIABILITY

 Under Georgia law,[2] an insurance company must give equal consideration to the interests of the insured in making decisions concerning the litigation and the settlement of a claim under the policy. *National Emblem Insurance Co. v. Pritchard*, 140 Ga.App. 350, 231 S.E.2d 126, 126 (1976); *Great American Insurance Co. v. Exum*, 123 Ga.App. 515, 181 S.E.2d 704, 707–08 (1971); *United States Fidelity & Guaranty Co. v. Evans*, 116 Ga.App. 93, 156 S.E.2d 809, 812, *aff'd*, 223 Ga. 789, 158 S.E.2d 243 (1967). The insurance company is not required, however, to give paramount consideration to the interest of its insured. *National Emblem Insurance Co. v. Pritchard*, 231 S.E.2d at 126. Over Hartford's objection, the district court failed to instruct the jury as to the equal consideration rule. Instead, the jury instruction was couched in terms of the conflict of interest facing Hartford's attorneys and the professional duties that Hartford's attorneys owed to both Hartford and National. Hartford contends that the

instruction was tantamount to charging that Hartford was required to give National's interest paramount consideration in recommending and in pursuing the third-party complaint against Maryland. However, despite the district court's explanation to the jury of Hartford's duty in terms of the Hartford attorneys' conflict of interest, the instruction clearly includes the equal consideration rule. The court instructed the jury that Hartford would be liable only if the recommendation or pursuit of the third-party complaint "could benefit Hartford but be detrimental to National," (T–362) or if Hartford's attorneys "subordinated the interests of National in any way to those of Hartford." (T–363) We conclude that these instructions substantially charged the correct Georgia law relating to the equal consideration rule. Under that rule, Hartford would be liable to National if, on balance, the pursuit or recommendation of the third-party complaint against Maryland, or the settlement splitting liability with Maryland, benefited Hartford, but was detrimental to National. Equal consideration would require Hartford's actions to be equally detrimental or equally beneficial to both Hartford and National. Further, the rule would not permit Hartford to subordinate National's interests to its own. Hartford would have to treat both its and National's interests as carrying equal weight in litigation decisions. *National Emblem Insurance Co. v. Pritchard, supra; Great American Insurance Co. v. Exum, supra; United States Fidelity & Guaranty Co. v. Evans, supra.* Thus, although the district court did not expressly charge the equal consideration rule, the charge was sufficiently similar to meet the rule's requirements.[3]

---

**2.** On appeal, both National and Hartford base their arguments on Georgia law, arguing the law of other jurisdictions only as persuasive authority. The district court's jury instructions also seem based principally on Georgia law, although this is not clear. Because both parties in effect concede on appeal that Georgia law applies to this case, neither party contending otherwise, and because the application of Georgia law is not manifestly unjust, we need not reach the choice of law issue. *Cf. N. K. Parrish, Inc. v. Southwest Beef Industries*

*Corp.*, 638 F.2d 1366, 1370 n.3 (5th Cir. 1981) (parties and district court interpreted agency agreement under Texas law; because neither party raised or briefed choice of law issue on appeal, Texas law assumed to apply); *Smith v. New York Life Insurance Co.*, 579 F.2d 1267, 1270 n.5 (5th Cir. 1978) (parties bound by legal theories on which they rely in district court, including choice of law in diversity case, absent manifest injustice).

**3.** We understand that a defending insurer such as Hartford may consider itself confronted with

■ Hartford also challenges the district court's jury instruction to the effect that the policy did not permit Hartford to settle the third-party complaint against Maryland without National's consent. Although the policy contains implications that the insurer is vested with authority to conduct the defense of the suit, which would include settlement, and although there is language requiring the insured to cooperate and assist the insurer in making settlements, there is no explicit grant of authority to the insurer to make settlements that elevate the interests of the insurer over those of the insured. Hartford argues further that under Georgia law an insurer has a right to settle claims against the insured without the insured's consent, citing *Spearman v. Southeastern Highway Contracting Co.*, 126 Ga.App. 549, 191 S.E.2d 351 (1972). *See* Ga.Code Ann. § 56–408.1 (Supp.1981). Assuming, without deciding, that Georgia law gives an insurer a general right to settle without consent, the application of such a general rule in the instant case, or the application of policy language implying a right to settle without consent, would fly in the face of the equal consideration rule. As discussed above, the equal consideration rule forbids an insurer from subordinating the interests of its insured to its own interest. Thus, we hold that Hartford could not settle the third-party complaint against Maryland without National's consent.

Accordingly, we reject Hartford's challenge to the jury instructions relating to the equal consideration rule and to the right to settle without consent. We affirm the district court's judgment to the extent that it enforces the jury's finding of liability on Hartford's part.

## V. DAMAGES

■ Hartford contends that the district court improperly refused to instruct the jury on the issue of whether National sustained any harm as a result of Hartford's division of liability with Maryland, even assuming that Hartford is liable for failure to give proper consideration to National's interest in that division. Hartford asserts that both the Hartford and the Maryland policies contemplate the use of an exposure theory of insurance coverage as to a claim resulting from prolonged exposure to a harmful substance. In addition, Hartford urges that its investigation of the facts surrounding Riley's exposure to Zep Plus indicates that his exposure straddled the Maryland and Hartford policy periods. Because of this exposure under both policies, Hartford argues that even if the third-party complaint had been litigated to establish the proper division of liability, the result would have been a division requiring National to pay the full deductible under each policy. Thus, Hartford contends that National incurred no liability other than that demanded by the policy provisions and the facts of Riley's exposure.

We agree that the district court should have instructed the jury on these issues. In a recent asbestosis case involving Louisiana

---

a difficult situation. The insurer is faced both with an injured plaintiff's acceptance of a favorable settlement offer on the eve of trial and with a pending third-party complaint against another insurer for at least partial contribution to the settlement. The need for rapid consummation of the settlement negotiations might seem to impel an equally rapid resolution of the third-party complaint, in order to determine who issues the settlement check.

However, Hartford had three alternatives to this apparent dilemma that would have avoided this suit by National. Hartford could have obtained National's express written consent to the precise division of liability between the two insurers. If the insured had refused such consent, as here, or if the need for consummation of the settlement had appeared too urgent, the defending insurer had two other choices. It could have paid the settlement in full itself and litigated the third-party complaint later. The third-party litigation would have established the appropriate liability as between the two insurers and also the proper liability of the insured for deductibles. Another alternative available to the defending insurer was to have negotiated a funding arrangement with the other insurer, in which both would have paid part of the settlement, but both would have reserved the right to litigate between themselves the appropriate legal liability. Thus, the defending insurer could have obtained a favorable settlement with the injured party, yet avoided a suit by the insured, like the instant one, contesting the manner in which the settlement was divided among the insurers.

law, this court construed insurance policy provisions similar to those in Hartford's policy to require the use of the exposure theory in determining an insurer's share of liability for the claim. *Porter v. American Optical Corp.*, 641 F.2d 1128, 1145 (5th Cir. 1981) (citing with approval *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980)). Both parties here argued in the district court that Georgia law controls the construction of the Hartford and Maryland policies. In light of *Porter*, we reverse the district court's judgment as to damages and remand for consideration of the contract issues under Georgia law, which will determine the damages, if any, properly flowing to National as a result of Hartford's breach of duty in settling the third-party litigation against National's interest.

On remand, the district court will have to decide whether the policies require the use of the manifestation or the exposure theory as to injuries caused by a substance such as Zep Plus. The adoption of one theory or another is a matter of contract interpretation and thus a legal question, not a jury question. Once the appropriate theory is selected, however, subsidiary factual issues may arise. If the manifestation theory applies, one factual question is when Riley's injury manifested itself. If the exposure theory applies, a factual question is what percentage of Riley's exposure to Zep Plus occurred in each policy period.[4] Of course, if the manifestation theory applies, National would have been liable for only one deductible. However, if the exposure theory applies, National would have been liable for all or part of both deductibles, depending on the extent of exposure during each policy period.

## VI. ATTORNEY'S FEES

■ In addition to actual and punitive damages, National also sought attorney's fees. Under Georgia law, a plaintiff may recover attorney's fees if the defendant acted in bad faith in the transaction out of which the cause of action arose, or was stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. *General Refractories Co. v. Rogers*, 240 Ga. 228, 239 S.E.2d 795, 800 (1977); Ga.Code Ann. § 20–1404 (1977). A plaintiff need demonstrate the existence of only one of the three enumerated grounds in order to obtain attorney's fees. *Altamaha Convalescent Center, Inc. v. Godwin*, 137 Ga.App. 394, 224 S.E.2d 76, 78 (1976). The jury awarded National $20,000 in attorney's fees. At the conclusion of all the evidence, Hartford moved for a directed verdict on the attorney's fees claim. The district court took the motion under advisement. Two days after the jury issued its verdict, the district court heard arguments on and denied the directed verdict motion.

■ The district court may grant a directed verdict motion only when, considering all of the evidence and inferences therefrom in the light most favorable to the party opposing the motion, a reasonable jury could not reach a contrary verdict. *Walker v. Tenneco Oil Co.*, 615 F.2d 1121, 1123 (5th Cir. 1980); *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). We conclude that the district court should have granted Hartford's directed verdict motion; we remand with instructions to enter judgment for Hartford on the attorney's fees claim.

■ At trial, National focused on the bad faith and stubbornly litigious grounds for an attorney's fees award.[5] As to the bad faith ground, no reasonable jury could find that Hartford acted in bad faith in its initiation and settlement of the third-party complaint against Maryland. Hartford pro-

---

**4.** Hartford also contests the district court's failure to instruct the jury that under Georgia law the coverage of an insurance policy may not be extended by estoppel or waiver. Under the circumstances here, we conclude that the district court's failure to give the charge was not reversible error.

**5.** We perceive no evidence that would support an award based on the ground that Hartford caused National unnecessary trouble and expense.

**464**

duced uncontradicted testimony indicating that it recommended and filed the third-party complaint on National's behalf based on its belief that either it or Maryland would be liable for the Riley claim. The facts demonstrate beyond doubt that there was a reasonable basis for Hartford's belief that Maryland, rather than Hartford, might be liable. Indeed, Hartford might have been subject to serious criticism had it failed to bring Maryland into the Riley litigation. Without Maryland in the case, National could have been left with a verdict against it, but with no insurance coverage at all. Only with both Hartford and Maryland in the case was National assured of coverage.

With respect to the settlement of the third-party complaint without National's consent, Hartford produced uncontradicted testimony indicating that it settled the complaint without National's consent based on its belief that the policy gave it a right to do so. Considering (1) the ambiguous policy language, (2) the novel question facing Hartford of whether the alleged general right of the insurer to settle without the insured's consent applies when the division of liability between two insurers results in the subordination of the insured's interest to that of the insurer, and (3) the time pressure existing when Hartford was faced both with that novel question and with the need to act quickly to preserve a favorable settlement, we conclude that no reasonable jury could find that Hartford acted in bad faith in settling the third-party complaint with Maryland. Our conclusion is reinforced by our ultimate resolution of the novel question, reached after several months of study. Under our resolution, Hartford should have either settled the appropriate division of insurance coverage with *both* Maryland and National, or litigated the issue. On remand, precisely the same process will occur.

■ With respect to the stubbornly litigious ground, attorney's fees are permissible only when the suit involves no bona fide controversy. *Nestle Co. v. J. H. Ewing &*

*Sons,* 153 Ga.App. 328, 265 S.E.2d 61, 65 (1980). We conclude that no reasonable jury could find that no bona fide controversy existed in this case.

Because National was not entitled to attorney's fees under any ground, the district court should have granted Hartford's directed verdict motion as to attorney's fees. We remand this issue to the district court with instructions to enter judgment for Hartford with respect to the attorney's fees claim.

For the reasons discussed above, the district court's judgment is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.