**John W. McFARLAND, Plaintiff,**

**v.**

**FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, Defendant.**

**No. CV-82-103-M.**

United States District Court, D. Montana, Missoula Division.

Sept. 27, 1984.

Larry R. Meyer, Stevensville, Mont., for plaintiff.

Donald V. Snavely, Missoula, Mont., for defendant.

## OPINION AND ORDER

HATFIELD, District Judge.

This action involves a question of coverage under a title insurance policy issued by Defendant First American Title Insurance Company (First American) to Plaintiff John McFarland (McFarland) in connection with his purchase in December of 1980 of a tract of acreage near Clinton, Montana. Presently before the court are (1) a motion by McFarland for leave to amend the complaint, and (2) cross-motions for partial summary judgment and a request by First American for oral argument on these cross-motions.

## BACKGROUND

Watson and Artie Hancock (the Hancocks) own real property adjoining McFarland's property. At one time, some or all of the Hancocks' property and McFarland's property were owned by S.S. Elliott. On

June 29, 1981, the Hancocks filed an action in Montana state court against various defendants, including McFarland. The Hancocks alleged among other things that they own a water ditch easement across McFarland's property.

A title insurance policy issued by First American to McFarland in December of 1980 did not list the ditch easement claimed by the Hancocks. On May 24, 1982, McFarland notified First American of the Hancock action and demanded that First American defend and indemnify him under the terms of the title insurance policy. McFarland informed First American that the Hancocks' easement claim was based in part on a document entitled "Notice of Appropriation" executed by S.S. Elliott and filed with the Missoula County Clerk and Recorder on September 14, 1905. First American refused to defend or indemnify McFarland, claiming that the Hancocks' claim was based solely on a prescriptive use theory which was excluded from coverage by the insurance policy.

McFarland filed a third-party complaint against First American, alleging that First American breached its duty to defend McFarland by failing to defend him in the Hancock litigation, that First American has a duty to indemnify McFarland in the event that McFarland is found liable in the Hancock litigation, and that First American was negligent as a matter of law in failing to disclose in the insurance policy the existence of the ditch easement claimed by the Hancocks. The entire action was removed to federal court. The principal action brought by the Hancocks was remanded to state court, but the federal court retained jurisdiction over the action between McFarland and First American.

In May or June of 1983, First American agreed to defend McFarland in the Hancock litigation. First American claimed that it agreed to do so only because it had been led to believe that the Hancock action could be quickly settled for a minimal amount. First American reserved its rights to later challenge its lack of any duty to defend or indemnify McFarland. McFarland had paid $1,500 in attorney's fees and costs on his defense in the Hancock litigation prior to the time that First American assumed his defense.

In January of 1984, First American settled the Hancock easement claim for $4,000. As a part of the settlement, McFarland was not required to waive any of his claims against the Hancocks. The Hancocks agreed to quitclaim any interest they had in McFarland's property to First American and to assign all of their rights in the Hancock litigation to First American. First American agreed that it would tender all of those rights to McFarland to pursue as he saw fit. The effect of the settlement was to remove from McFarland's property any cloud upon his title created by the Hancocks' ditch easement claim. First American disputed that it had a duty to defend or indemnify McFarland and reserved the right to contest this fact. Left pending in the state court action was McFarland's claim for rescission against his sellers based upon failure to convey clear and marketable title.

## MOTION FOR LEAVE TO AMEND COMPLAINT

McFarland moves for leave to amend the complaint pursuant to Fed.R.Civ.P. 15(a). The proposed complaint sets forth several facts regarding First American's conduct toward McFarland and his claims since the filing of McFarland's initial complaint. The proposed complaint also adds a claim for damages for McFarland's emotional distress incurred as a result of the alleged negligent failure of First American to notice the claimed easement or advise McFarland of such. The proposed complaint also adds a claim for relief alleging violation of First American's duty to act in good faith with respect to McFarland and his claims and requests an award of compensatory and punitive damages.

First American argues that McFarland's motion to amend should be denied because the motion will have an unduly burdensome effect on the course of this action. Since a bad-faith claim against an insurance com-

pany puts in issue the insurance company's conduct and motives, the attorneys may be called as witnesses. First American argues that, if the court grants McFarland's motion, then both its attorney and McFarland's attorney would be forced to withdraw immediately from the case, and both parties would be forced to hire new attorneys. This would impose additional expense on the parties and undoubtedly delay resolution of this action.

The additional claims advanced by McFarland in his proposed amended complaint are supported by the facts as alleged. Furthermore, First American's argument is unconvincing. The fact that the attorneys for both parties could be called as witnesses at trial does not justify refusing to allow McFarland to properly advance his claim.

IT IS THEREFORE ORDERED that McFarland's motion for leave to amend the complaint is granted.

## CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

*As to First American's duty to defend:*

The insurance policy states that First American shall defend McFarland "in all litigation consisting of actions or proceedings commenced against [McFarland] ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy." The policy provides that, subject to the listed exclusions, First American insures to the extent of $162,000 against loss or damage incurred by reason of "any defect in or lien or encumbrance on such title" or by reason of "unmarketability of such title." The policy further provides, however, that it does not insure against loss or damage by reason of any "claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof" or by reason of "[e]asements, claims of easement or encumbrances which are not shown by the public records." Reading the policy coverage provisions together with the exclusion language, it is clear that the policy provides coverage against any right or easement shown by the public records. Thus the existence of First American's duty to defend turns on whether the easement claimed by the Hancocks is shown by the public records.

McFarland claims that the alleged ditch easement is shown by two public records. The first is a document entitled "Notice of Appropriation" executed by S.S. Elliott and filed with the Missoula County Clerk and Recorder on September 14, 1905. This instrument was filed to perfect a water right in the Hellgate River (now the Clark Fork River) and contains the following provisions:

> That the means of diversion ... is as follows: A 6 ft. by 4 ft. Ditch in size, which carries and conducts 1000 inches of water from Hell Gate River ....
>
> That I also hereby claim said ditch and the right of way therefor ....
>
> That I also claim the right to keep in repair and to enlarge said means of water appropriation at any time, and the right to dispose of said right, water, ditch or said appurtenances in part or whole at any time.

The second instrument relied upon by McFarland is an agreement executed between Lee Elliot and C.L. Gaiser on September 17, 1919, and filed on October 4, 1919. The agreement provides for the maintenance of an irrigation ditch. Although the agreement does not contain a legal description, it describes the ditch as the one which carries the water "appropriated by S.S. Elliot, on the 14th day of September, 1905, and which water right is recorded in Book F Water Rights at Page 161, in the records of Missoula County, Montana ...." The agreement further indicates that there are several owners of the ditch and refers to Elliott as the "principal owner."

The Hancocks relied on both the Notice of Appropriation and the ditch maintenance agreement to establish their ditch easement claim in the state court action.

First American concedes that the Notice of Appropriation and the ditch maintenance agreement affect McFarland's property and that the remains of an old water ditch do cross McFarland's property. First American contends, however, that it was not obligated to assume McFarland's defense in the Hancock litigation because McFarland did not establish "by undisputed evidence that the water ditch described in the Notice of Appropriation and Ditch Maintenance Agreement is the very same water ditch which was the subject of the Hancocks' claims in the related state court litigations."

First American's contention is without merit. First American's duty to defend was not conditioned upon a showing of the validity of the Hancocks' claim—that was the issue of the state court action that First American allegedly had a duty to defend. The duty to defend exists whether or not the adverse claim has merit. The title insurer must assume that the allegations of the adverse claimant have merit in deciding whether to defend. If the claim does not have merit, the insurer still bears the risk of paying the litigation costs to establish the lack of merit to the adverse claim. *See generally* 14 M. Rhodes, Couch on Insurance 2nd § 51:42 (rev. ed. 1982). *See also St. Paul Fire & Marine Insurance Co. v. Thompson,* 150 Mont. 182, 188, 433 P.2d 795, 798–99 (1967). Accordingly First American's duty to defend arose at the time that it was notified that the Hancocks were claiming an easement on McFarland's property based on the recorded Notice of Appropriation.

First American also contends that the documents are legally insufficient to *create* a valid ditch easement across McFarland's property and accordingly are excluded from coverage. First American further contends that the only possible basis for the Hancock easement claim is one of prescriptive use, which is also excluded from coverage.

Again, First American's contentions are without merit. The policy does not provide that an alleged easement must be "created" by the public records. Nor does the policy provide that it covers only express, as opposed to prescriptive, easements. The policy states only that it does not cover easements which are not "shown" by the public records. The Montana Supreme Court recently held that a title insurance policy containing similar language provided coverage against a claimed easement which was based on a right that was sufficiently mentioned in documents of record. In *Lipinski v. Title Insurance Co.*, Mont., 655 P.2d 970 (1982), the court affirmed a district court judgment which had awarded damages against a title insurance company. The judgment was based upon the insurer's failure to determine and disclose certain ditch right easements to the insured and its failure to defend the insured in lawsuits brought as a result of those undisclosed rights. A 1944 warranty deed in the insured's chain of title recited that the grant was "subject to rights established by irrigation ditch." *Id.* 655 P.2d at 974. The insurer failed to note this exception on the policy and to take any further action to determine the existence of the irrigation ditch or claimed easement. The court held that this recital was sufficient to put the insurer on notice that a duty was imposed to examine further the nature of the right and to disclose such to the insured. The court stated the following:

> The question is whether this recital put the title companies sufficiently on notice that a duty was imposed to further determine the nature of that right recited in the deed. The policy expressly excludes coverage for "... easements ... not shown by the public records ..." Because the warranty deed recital did not state that an easement existed, the title companies argue that the policy does not insure against that undisclosed easement. We hold, however, that the ditch rights were sufficiently mentioned in the recorded 1944 warranty deed to put the title companies on notice that there might also be easements accompanying those ditch rights. These possibilities should have been brought to Lipinski's

> attention and either specifically insured or specifically excluded from insurance coverage.

*Id.*

In the present case, a ditch and its accompanying rights and duties were sufficiently mentioned in both the recorded 1905 Notice of Appropriation and in the water ditch maintenance agreement to put First American on notice that there might also be easements accompanying those ditch rights. These possibilities should have been brought to McFarland's attention and either specifically insured or specifically excluded from insurance coverage.

First American also contends that, even if it is established that First American had a duty to defend McFarland and that First American breached that duty, McFarland's claim still has no merit for two reasons.

First, First American argues that the language of the title insurance policy precludes such a claim. The policy provides that "[n]o claim shall arise or be maintainable under this policy (a) if [First American], after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, within a reasonable time after receipt of such notice ...." First American argues that once it assumed McFarland's defense it settled the Hancock claim as soon as possible. First American further argues that it was the Hancocks' unrealistic view as to the merit of their claim that delayed the settlement as long as it did.

The weakness with First American's argument is that First American refused to assume McFarland's defense until after McFarland filed an action against First American demanding that it do so. Even so, First American did not agree to assume the defense until a year after it was notified of the Hancock action. Under the facts of this case, it cannot be said that First American removed the defect from McFarland's title "within a reasonable time after receipt of such notice." Accordingly, the policy limitation does not preclude McFarland's claim.

Second, First American argues that McFarland's claim fails because he can show no damages from the alleged breach of duty to defend because First American (1) eventually did assume McFarland's defense in the Hancock litigation, (2) removed the cloud from McFarland's title, and (3) now offers to reimburse McFarland for the $1,500 that he paid in attorney's fees and costs before First American assumed his defense.

This argument is also without merit in light of the fact that First American disputes that it has a duty to defend or indemnify McFarland and reserved the right to contest any such obligations.

In conclusion, First American had a duty to defend McFarland in the Hancock action. First American breached that duty when it failed to assume McFarland's defense within a reasonable time after receiving notice that the Hancocks claimed a ditch easement based on the recorded Notice of Appropriation.

IT IS THEREFORE ORDERED that McFarland's motion for partial summary judgment on this issue is granted.

*As to First American's duty to indemnify:*

As a general rule, the duty to indemnify exists only if the adverse claim is established. 14 M. Rhodes, Couch on Insurance 2nd § 51:42 (rev. ed. 1982). The validity of the Hancocks' adverse claim was the issue in the state court action. In January of 1984, however, First American settled the Hancocks' adverse claim for $4,000. First American denies that in settling it admitted the validity of the Hancocks' claim. Rather First American claims that it settled the Hancocks' claim simply for economic reasons, *i.e.*, it was far cheaper to pay the Hancocks $4,000 than to pay for McFarland's defense in the Hancock litigation and at the same time take the risk that the Hancocks would succeed on their claims against McFarland.

As was previously stated, First American had a contractual duty to defend McFarland in the Hancock litigation. The position of McFarland, and thus First American, was that the Hancocks' adverse claim had no merit. By settling the Hancocks' claim for its own economic reasons, First American deprived McFarland of its defense in proving the invalidity of the Hancocks' claim. For purposes of this motion, First American is now estopped from denying that the Hancocks' adverse claim has been established.

IT IS THEREFORE ORDERED that McFarland's motion for partial summary judgment on this issue is granted, and First American's motion for partial summary judgment is denied.

*As to the issue of negligence:*

*—First American's motion:*

First American moves for partial summary judgment on McFarland's claim that First American was negligent in failing to disclose in the insurance policy the existence of the ditch easement claimed by the Hancocks.

First American contends that it could not have been negligent in failing to disclose the claimed easement because it had no duty to disclose the existence of the claimed water ditch easement. As discussed above, First American did have a duty to disclose the claimed easement. Accordingly, First American's contention is without merit.

First American also contends that McFarland's claim for breach of contract is inconsistent with his claim for negligence. First American contends that, if the court determines that First American had a duty to disclose the easement claimed by the Hancocks, then First American is contractually obligated to provide coverage without regard to negligence. First American points to the following language in the title insurance policy in support of its contention that the policy precludes McFarland from asserting a claim in negligence:

> Any claim of loss or damage, *whether or not based on negligence,* and which arises out of the status of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy.

(Emphasis added).

An insured is entitled to bring an action against a title insurer for loss sustained because of the insurer's negligence in the performance of its duties under the title insurance policy. *Quigley v. St. Paul Title Insurance & Trust Co.,* 60 Minn. 275, 62 N.W. 287 (1895). *See also Demopoulous v. Title Insurance Co.,* 61 N.M. 254, 298 P.2d 938 (1956). The language of the policy in the present case does not preclude a claim in negligence.

IT IS THEREFORE ORDERED that First American's motion as to this issue is denied.

*—McFarland's motion:*

McFarland, relying on *Lipinski,* Mont., 655 P.2d 970, moves the court for a ruling that First American was negligent as a matter of law in failing to disclose in the insurance policy the existence of the ditch easement claimed by the Hancocks. In *Lipinski* the court stated:

> A title company, as insurer, owes its clients the duty of conducting a title search with reasonable care. Although liability does not attach for failure to discover defects which cannot be discovered with reasonable care, here a title examiner conducting a title search should have been alerted to the possible consequences of the recital in the 1944 warranty deed. An examination of the premises should have revealed the very real possibility that an easement existed to give effect to the irrigation ditch recital in the 1944 warranty deed. Examination would have revealed that water on Lipinski's property was being dammed and conducted away from his land through irrigation pipes or canals leading onto a neighbor's land.

Id. 655 P.2d at 974.

It cannot be said on the facts before the court in the present case that an examina-

tion of the premises should have revealed the very real possibility that a ditch easement existed. There is evidence from which a jury could find that an examination of the property would have revealed little or nothing of the existence of a ditch. In any event a fact issue exists as to what an examination would have revealed.

IT IS THEREFORE ORDERED that McFarland's motion on this issue is denied.

The parties have adequately briefed these cross-motions, and oral argument is unnecessary. Accordingly, First American's request for such an argument is also denied.