**ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**ARIES MARINE CORPORATION, Defendant.**

Civ. A. No. H–88–3442.

United States District Court,
S.D. Texas,
Houston Division.

May 4, 1990.

---

Mark C. Clemer, Brown, Sims, Wise & White, Houston, Tex., for plaintiff.

Robert D. Green, Houston, Tex., for defendant.

## ORDER

HOYT, District Judge.

Pending before the Court is the plaintiff's, Arkwright–Boston Manufacturers Mutual Insurance Company's ("Arkwright–Boston"), Motion for Summary Judgment. After careful consideration of the motion and the response thereto, the Court finds that dismissal of this case under Federal Rule of Civil Procedure 12(b)(6) is more appropriate.

### STATEMENT OF FACTS

This case involves a coverage dispute between Arkwright and the defendant, Aries Marine Corporation ("Aries"), concerning the retained limit clause in the excess policy that Arkwright provided for Aries. The question presented is whether an excess underwriter can sue its insured for indemnity (based on a retained limit clause) when the excess underwriter, who has no duty to defend, settles a claim on behalf of the insured.

Aries had two insurance policies on several vessels; one policy was provided by Glacier General Assurance Company and the other by Arkwright. The Glacier policy provided coverage for personal injury aris-

ing out of the ownership of vessels up to a limit of $500,000 per claim per vessel. Aries Marine was also a named insured on ocean marine policy No. MMO–58703, issued by Arkwright–Boston. This policy was an excess policy providing indemnity for personal injury claims from $500,000 up to a limit of $20,000,000.

On October 30, 1982, during the terms of the Glacier and the Arkwright policies, an injury was sustained by Fred M. Lynch, II while he was working aboard the M/V RAM VII, a vessel operated by Aries. The M/V RAM VII was listed on the schedule of insured vessels of the Glacier policy and the Arkwright–Boston policy.

Lynch filed suit against Aries and others in the state district court seeking damages against them on account of his injuries. Aries was initially provided a defense in the Lynch suit by Glacier until it became insolvent. Thereafter, Aries hired a private law firm to defend against the *Lynch* suit.

The Arkwright policy did not require it to defend Aries against the claims asserted by Lynch. However, the evidence presented shows that Arkwright played a major role in the negotiations and final settlement of the Lynch claim. During the negotiations, Arkwright's attorney orally demanded that Aries contribute $500,000 to the settlement. However, Aries refused to contribute to the settlement more than $25,000 toward the Arkwright portion of $982,000. Five other defendants contributed the remainder of the $1,745,000 settlement.

## PARTIES ALLEGATIONS

Arkwright argues that when the primary insurer becomes insolvent, the scheduled underlying insurance is included in the calculation of the assured's retained limit. Therefore, the retained limit becomes the responsibility of the assured. Arkwright contends that Aries' refusal to contribute its retained limit toward a reasonable settlement does not shift the burden of Glacier's insolvency to Arkwright.

Arkwright also argues that "an insured should not be able unreasonably to expose an insurer to additional liability by refusing to contribute to a settlement, any more than the company should be able to expose the insured to such liability." Windt, *Insurance Claims and Disputes* § 5.20, p. 270 (2d Ed.1988). In effect, the plaintiff argues that where the assured refuses to contribute its deductible, or in this case its retained limit, to a reasonable settlement, the underwriters have the option of settling the case and suing the assured for reimbursement. In this regard, Arkwright demands $475,000, less Aries' reasonable costs of defending the Lynch suit. Arkwright has requested Aries Marine to submit its reasonable costs of defending the claims asserted by Lynch. However, Aries has not yet done so.

Aries argues that at no time did Arkwright properly reserve its right to indemnity. Further, Aries asserts that Arkwright, by simply stepping in and settling the case on behalf of Aries, created no obligation on Aries' behalf.

## ANALYSIS

■ The general rule in Texas is that "while waiver or estoppel may preclude an insurer's policy defense, arising out of a condition or forfeiture provision, these doctrines do not normally operate to prevent the assertion of a defense of noncoverage."[1] *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169, 1173 (5th Cir.1973); *Minnesota Mutual Life Insurance Co. v. Morse*, 487 S.W.2d 317 (Tex. 1972); *Washington National Ins. Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165 (1937). There is an exception to this general rule.[2] Under Texas law, if an insurer

1. It is clear that substantive Texas law applies to the issues in this case. However, this Court has not been directed to, nor has it discovered any Texas law which is directly on point. Thus, this Court must declare the law in accordance with these facts. Because neither party raises the issue of whether Texas law applies, this Court will apply Texas law as it is not "manifestly unjust" and this Court will not reach the choice of law issue. *See Nat'l Service Industries v. Hartford Accident Indemnity Co.*, 661 F.2d 458, 461, n. 2 (5th Cir.1981).

2. It is not the insurer being sued in this case, but rather the insured. Practically speaking

defends an insured without obtaining a reservation of rights and with knowledge of facts indicating noncoverage, all policy defenses, including those of noncoverage are waived, or the insurer may be estopped from raising them.[3] *Ferris v. Southern Underwriters,* 109 S.W.2d 223 (Tex.Civ.App.—Austin 1937, writ ref'd); *Automobile Underwriters' Ins. Co. v. Murrah,* 40 S.W.2d 233 (Tex.Civ.App.—Dallas 1931, writ ref'd). In order for estoppel to apply, the insured must demonstrate the forfeiture of some legal right or suffering of "actual or presumptive prejudice because of the insurer's action." *Pacific Indemnity,* 485 F.2d at 1169. In this regard, the manner in which the Lynch case was settled is germane.

Estoppel principles may be applicable if the evidence shows that in settling the case Arkwright "assum[ed] the defense" of the insured. This Court has been unable to find any cases that expressly address the question of whether orchestrating a settlement, when the insured has independent counsel, is tantamount to assuming the defense. This Court believes, however, that this holding would be consistent with Texas law and general principles of insurance jurisprudence; thus any such holding would be consistent with sound public policy. *See also McFarland v. First American Title Ins.,* 595 F.Supp. 630 (D.Mont.1984) (when insurer assumed the defense, insurer would be estopped from denying that it admitted validity of adverse claim when it settled claim on behalf of insured). The ultimate resolution of this issue turns on how the settlement was effected and what rights of the insured may have been foreclosed.

### I.

■ Insurers have been found to have assumed the defense in several different fact scenarios: *City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d 1052

(8th Cir.1979) (Aetna undertook defense of the action by filing a general appearance without any indication that it might deny coverage); *Pacific Indemnity Co. v. Acel Delivery Service, Inc.,* 485 F.2d 1169 (5th Cir.1973) (attempt to withdraw after one and one-half years of representation is an assumption of the defense); *Pendleton v. Pan American Tire & Casualty Co.,* 317 F.2d 96 (10th Cir.1963) (Insurer that took control of settlement negotiations assumed the defense although the insured had retained private counsel and the insurer had no duty to defend). *See also McFarland v. First American Title Ins.,* 595 F.Supp. 630 (D.Mont.1984) (when insurer assumed the defense, insurer would be estopped from denying that it admitted validity of adverse claim when it settled claim).

In the instant case, Arkwright concedes that under the terms of the agreement, it was not necessary for Arkwright to provide a defense for Aries, yet Arkwright actively participated in the settlement negotiations and decided the final terms of the settlement in the *Lynch* case. With these affirmative actions, the case law and the manner of settlement, this Court finds that by engaging in the settlement negotiations, Arkwright assumed the defense of this action.

### II.

The Court now determines whether estoppel should apply in this case. In determining whether estoppel applies, the Court must apply the three-pronged test set out in *Pacific Indemnity,* 485 F.2d 1169. This Court must determine whether the insurer obtained an effective non-waiver agreement or reservation of rights under the policy, whether the insurer had sufficient knowledge of the facts upon which to predicate estoppel; and, whether the settlement was prejudicial to the insured. *Id.* at 1173.

---

Arkwright's contention that the retained limit clause is a deductible owed by Aries is much like a noncoverage defense.

**3.** Where the loss is not covered by the policy, "it is inaccurate to speak of 'waiver,' which is a voluntary and intentional relinquishment of a known right, since there is nothing to waive, but

it is accurate to speak of 'estoppel', which refers to an abatement raised by law of rights and privileges of insurer where it would be inequitable to permit their assertion." *City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d 1052, 1053 (8th Cir.1979).

First, this Court holds that Arkwright's unilateral attempt to effect a reservation of rights was wholly without force. "A reservation of rights ... is a means by which prior to determination of the liability of the insured, the insurer seeks by agreement to suspend the operation of the doctrines of waiver and estoppel." *Farmers Texas County Mutual Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522, 523 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.). When the effect or validity of the reservations of rights is in issue, "the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." *Farmer Employers Casualty Co. v. Tilley,* 496 S.W.2d 552 (Tex.1973); *Western Casualty & Surety Co. v. Newell Manufacturing Co.,* 566 S.W.2d 74 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

In order for the insurer to protect its interest, it must do one of two things. "It should either (a) attempt to stay the action against the insured and initiate a declaratory judgment action, *Casualty Reciprocal Exchange v. Thomas,* 7 Kan.App.2d 718, 647 P.2d 1361, 1363 (1982), or (b) settle the action against the insured subject to a reservation of rights to seek indemnification from the insured." Windt, *Insurance Claims and Disputes,* § 5.05 (2d ed. 1988); *See e.g., Employers Mutual Liability Ins. Co. v. Sears, Roebuck & Co.,* 621 F.2d 746, 747 (5th Cir.1980).[4]

The majority of courts refer to a valid reservation of rights being in the form of a "letter" or "agreement." *City of Carter Lake* at 1060; *Pacific Indemnity* at 1173

("... assumes the defense without obtaining a non-waiver *agreement* or a reservation of rights....") (emphasis added); *Pendleton v. Pan American Fire & Casualty Co.,* 317 F.2d 96, 99 (10th Cir.1963) (Court held that insurer failed to attempt to *enter into an agreement*) (emphasis added). Arkwright states in its response that a reservation of rights "has nothing to do with the case" and that Arkwright did not assume the defense of Aries.[5] This Court disagrees. The evidence shows that the *Lynch* suit was settled the 30th or 31st of March, 1988. The trial started the 21st of March, 1988. It appears from the record that Arkwright participated in the settlement negotiations during the course of the trial, as well as during the jury deliberations.

The Court notes that Arkwright has provided no evidence of a signed agreement or that the settlement reached was conditioned on an oral agreement that it now seeks to enforce. On the contrary, the insured made its position clear at the outset. Clearly, Arkwright was aware at the time it entered the settlement negotiations with Aries counsel of the existence of a policy defense, yet failed to establish a reservation of rights at the time of or prior to settlement negotiations. There is no evidence in the record that Arkwright notified Aries of its intent to sue for indemnification. Moreover, there is no "reservation of rights" letter in the record predating the settlement. The Court recognizes that at the time of the settlement negotiations, Arkwright's attorney made oral represen-

---

**4.** The Texas Court of Civil Appeals has stated that an insurer has four options: (1) completely decline to assume the insured's defense; (2) seek a declaratory judgment as to its obligations and rights; (3) defend under a reservation of rights or a nonwaiver agreement; or (4) assume the insured's unqualified defense. *Farmers Texas County Mutual Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1980). This Court is of the opinion that Arkwright assumed the insured's unqualified defense.

**5.** Arkwright cites *National Service Industries v. Hartford Accident & Indemnity,* 661 F.2d 458 (5th Cir.1981), in support of its proposition that a reservation of rights was not necessary in the *Lynch* case. Although this Court can appreciate

the fact that an insurer is put in "a difficult situation" when an offer of settlement is pending while the jury is deliberating, this Court will not transform a difficult situation into an impossible one. Arkwright's reliance on *Nat'l Service* is not well founded. In *Nat'l Service,* the insured was not claiming that the case was improperly settled. In fact, the insured *agreed* to settle the third party action. The dispute in that case was the division of liability. The instant case does not present that issue. Arkwright could have "had its cake and eaten it too." The case could have been settled and the jury permitted to establish the damages as well as the liability. This approach would have satisfied the insurer and the insured.

tations to counsel for Aries that Arkwright would seek indemnity from Aries after the *Lynch* suit was settled. However, this Court finds that this oral communication does not constitute a valid reservation of rights by Arkwright. Thus, this Court finds that Arkwright's letter dated June 14, 1988, was ineffective on this point and that estoppel is appropriate.

### III.

█ Finally, the factual basis of the settlement compels a finding of prejudice against Aries. Prejudice, within the estoppel theory, has been defined as the insured having "acted or refrained from acting in reliance on some conduct of the [insurer]." *See DiSanto v. Eustrom Helicopter Corp.,* 489 F.Supp. 1352, 1360 (E.D.Penn.1980). *See also Travelers Indemnity Co. v. Fields,* 317 N.W.2d 176, 177–78 (Iowa 1982) (doctrine of estoppel can apply to insurance coverage, but insured must demonstrate "among other elements reliance on a representation or other conduct to the person's prejudice.") There is authority for the proposition that losing control of one's own case is in itself prejudice. *Pendleton v. Pan American Fire & Cas. Co.,* 317 F.2d 96, 99 (10th Cir.1963). *See* 14 Couch 2d § 51:80, 51:91–93 (1965). *See also City of Carter Lake* at 1061.

This Court finds that the prejudice to Aries was the foreclosure of its opportunity to have the jury determine damages and liability. Arkwright could enter into a settlement with Lynch and still permit the jury to find favorably or unfavorably for Aries. Thus, the issue of responsibility under the retained limit clause would not now be before this Court.

Equally important in the Court's consideration in this case is the conflict of interest on the part of Arkwright. In *Employers Casualty Co. v. Tilley,* 496 S.W.2d 552, 560 (1973), the Supreme Court of Texas "recognized the conflict of interest when an attorney, acting on the behalf of the insurer in defending a claim against the insured simultaneously builds a defense against the insured on the part of the insurer." *Pacific Indemnity,* at 1176. The court held that when this type of situation arises, the insurer is under a duty to notify

the insured. *Id.* There is no evidence in the record that Arkwright notified Aries of this potential or real conflict. Although Arkwright's failure to notify Aries of this conflict may not have been as egregious as the failure in *Tilley,* this Court finds that Arkwright had a duty to notify and failed to do so.

█ This Court will not limit the doctrine of estoppel solely to duty to defend situations. It is the opinion of this Court that "the coverage afforded by an insurance policy should be extended by estoppel whenever the insurer's actions prior to its final coverage denial are justifiably relied on by the insured to his or her prejudice." Windt *Insurance Claims and Disputes* § 5.20 at 355.

The Court concludes that, to the extent that summary judgment is not appropriate, this case should be, and is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6). Arkwright's motion for summary judgment is DENIED; the Court DISMISSED this suit on its own motion, because summary judgment is appropriate for the defendant and because the plaintiff cannot assert any justiciable cause of action against the defendant.

This suit is ORDERED Dismissed.